IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jennifer Pérez Rivera; Myrna Liz Ortiz Cortés; Ivette de L. Montalvo León; Rodolfo Vidal Soto; Griselle Laboy Blanc; Carmen M. Crespo Figueroa; Diego Rosado Class; Jessica Nazario; Joanna Rivera Pérez; Samuel Enrique Fuentes Escobar; Carlos A Alvarez Flores; Nelly Colón Ortiz; and José Rubén Díaz<br><br>Plaintiffs<br><br>V.<br><br>Luis Alemañy, in his personal character, Miguel L. Vargas Jiménez, in his personal capacity, Antonio R. Piar Reyes, in his personal capacity, Gretel M. Cathiar and Economic Development Bank for Puerto Rico<br><br>Defendants | CIVIL NO. 24-1273<br><br>CIVIL RIGHTS<br>PLAINTIFFS DEMAND TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

COME NOW the plaintiffs, through their undersigned attorneys and very respectfully states, alleges and prays:

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiff's claims arise under the Fourteenth Amendments to the United States Constitution and are being brought pursuant to 42 U.S.C. § 1983 and 1988. This Court also has supplemental jurisdiction over all claims arising under the laws and Constitution of Puerto Rico herein asserted pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the District of Puerto Rico, pursuant to 28 U.S.C. §1391. All parties reside in Puerto Rico, and a substantial part of the acts, events and/or omissions giving rise to these claims occurred in Puerto Rico.

**II. PARTIES**

3. Plaintiffs are all employees of the Economic Development Bank for Puerto Rico (the Bank) and residents of this Commonwealth.

4. Defendant Luis Alemañy (Alemañy) is the President of Bank the at all times herein material to the allegations of the complaint.

5. Defendant Antonio R. Piar Reyes at all times herein material to the allegations of the complaint is the Executive Aid of the Bank. He started working there dealing with human resources on July of 2023.

6. Gretel M. Cathiard at all times hereing material to the allegations of the complaint is the legal advisor of the Bank and its President.

7. Miguel L. Vargas Jiménez began working at the Economic Development Bank for Puerto Rico in June of 2022 as Vice-president of Operations. Among his duties and responsibilities was human resources at the Bank. He ceased operations at the bank on January 19, 2024.

8. Defendant Economic Development Bank for Puerto Rico is a Governmental entity created by law, with the right to sue and be sued. It generates is own income and is not protected by the Eleventh Amendment to the United States Constitution.

**III. THE FACTS**

9. Act 80 of August 3, 2020 (Act 80) provided for the early retirement of different employees of the Government of Puerto Rico and some of its public corporations, with a 50% of their salary at that time, instead of the 38% or lower and having to wait until age 65. Act 80 applied to all plaintiffs in this case and they could have retired pursuant to this act. On October 14, 2020 the Retirement Services Administration of the Commonwealth of Puerto Rico and the Office of Management and Budget issued Circular Letter Num. 2021-01 for a process to implement Act 80. This Circular Letter was amended by 2021-2 on November 9, 2020 and later by Circular Letter 2021-3 of December 14, 2020. The period to request early retirement pursuant to Act 80 was extended until January 22, 2021. All Plaintiffs requested early retirement pursuant to Act 80 within the established period and all were notified by Defendant Bank that their positions were not essential.

10. On December 20, 2021, the Financial Oversight Management Board (FOMB) filed an adversary proceeding against Governor Pierluisi and others, Adv. Proc 21-00119 within the Title III process of the Commonwealth of Puerto Rico, 17-3283 to stop the implementation of Act 80. After filing said Adversary Proceeding, the parties sat down to discuss a solution to their differences.

11. On December 27, 2021, the parties in case 21-119 filed a stipulation with the Court and on December 28, 2021, Judge Swain approved said stipulation. The order states, *inter alia*, the following:

> The Court's approval or 'SO ORDERING' of this agreement shall invalidate JR 33 and Acts 80, 81, and 82 pursuant to PROMESA, including as significantly inconsistent with the certified fiscal plan, as of the enactment date for each of JR 33 and Acts 80, 81, and 82, except as provided for in paragraph 3 of this agreement.

12. Paragraph 3 of said order states:

Act 80 and JR 33 - The parties shall endeavor to reach an agreement on a means of implementing the incentivized early retirement provisions set forth in Act 80 for certain employees where doing so would create savings above and beyond the level of savings required in the currently certified fiscal plan (the "Baseline Savings") or otherwise satisfy some other metric the parties agree on, as follows:

a. On a per agency level, the Government shall provide both the descriptions of the position proposed to be eliminated (the "Proposed Eliminated Positions") and the projected net savings that will result from the elimination of said position while taking into consideration the incremental cost of providing the incentivized early retirement benefit (the "Savings");

b. If the parties mutually agree on (i) the Proposed Eliminated Positions, (ii) the Savings, and (iii) that the Savings are above and beyond the Baseline Savings, or otherwise satisfy some other metric the parties may agree on, then the parties shall use their respective best efforts to concur on a means of implementation within 45 days after the date of this agreement, including necessary fiscal plan and budgetary funding in compliance with PROMESA; and

c. The Eliminated Positions shall be eliminated within the Governmental system, and the eliminated positions, including any functionally similar positions, shall not be restored, recreated, or created within the affected agencies and corporations.

13. On January 25, 2022, the Retirement Services Administration of the Commonwealth and the Office of Management and Budge issued Circular Letter Num. 2021-04 establishing the second phase of the procedure to implement Act 80 Two time extensions were provided until March 5, 2022. On July 22, 2022 Circular Letter 2023-1 was issued where the first phase of the implementation of the early retirement pursuant to Act 80 was established. Subsequently, the parties to Adversary Proceeding 21-119 filed a new stipulation which was approved by Judge Swain on September 25, 2023. On October 5, 2023 Circular Letter 2024-02 was issued, establishing the second phase of the retirement program pursuant to Act 80.

14. On July of 2022, all Plaintiffs received a letter from the Retirement Board stating that their position was not essential and that they would be able to proceed to early retirement as per Act 80. On October 6, 2023, much to Plaintiffs surprise, they received a letter from Bank stating that the FOMB had determined that their position was essential and that they could not retire pursuant to Act 80. When Plaintiffs requested information from the FOMB, however, on December 22, 2023 it sent them a letter stating, *inter alia*, as follows:

> To ensure that savings will be achieved, the Government and the Oversight Board agreed to permanently eliminate certain positions.2 To ensure that the Government can still provide essential services, the Oversight Board and the Government also agreed that only non-essential positions can be eliminated permanently. With these parameters in mind, **the Government and the various agencies and public corporations determined which positions could be eliminated.** (Emphasis supplied, footnote omitted)

15. At some time between July 2022 and October 2023, Alemañy, Catiard, Piar, Vargas and the Bank conspired and decided, for reasons unknown, not to allow Plaintiffs to take early retirement. This decision, which affected Plaintiffs' property rights, was not communicated to them until October 2023 via a letter where the responsibility for the decision was placed on the Board, instead of Alemañy, Catiard, Piar, Vargas and the Bank, who were the ones who

conspired and took said decision. Neither Alemañy, Catiard, Piar, Vargas or the Bank gave Plaintiffs a pre or post deprivation hearing to challenge said decision.

16. On March 22, 2024, the FOMB and the Commonwealth filed a final stipulation in Adversary Proceeding 21-119 providing the positions that were eliminated in each agency. None of the Plaintiffs was included in said list. None of the Plaintiffs were able to take early retirement pursuant to Act 80. If allowed to retire pursuant to Act 80, they would receive 50% of their salary and would not have to wait to age 65 when the retirement percentage would be much lower.

17. Since the Board did not, contrary to what Defendants' claimed in the October, 2023 communication, make the decision not to allow Plaintiffs to take early retirement but was made by Defendants, the acts to deny Plaintiffs early retirement and then to lie as to who made the decision were intentional acts by Defendants. They are liable to Plaintiffs for their damages.

## IV. THE FIRST CAUSE OF ACTION-DUE PROCESS

18. Plaintiff reallleges and adopts by reference paragraphs 1-17 of this complaint.

19. Act 80 provided Plaintiffs with a property right, to wit, take early retirement at 50% of their present salary. The Commonwealth illegally agreed to stop putting in effect Act 80 in its entirety. Even if this act was not illegal, the stipulation of December 2021 and September 2023, coupled with the letter of July of 2022 informing Plaintiffs that they could take early retirement pursuant to Act 80, created a property right for them protected by the 5th and 14th Amendment Due Process clause.

20. Plaintiffs had and have a property interest in the early retirement process established by Act 80 and the aforementioned stipulations. At some time between July 2022 and October 2023, Defendants conspired with each other and decided not to allow Plaintiffs to take early

retirement pursuant to Act 80. Alemañy, as President of the Bank, was its final policy maker and in conspiracy with others, including Defendants, took the decision not allow Plaintiffs to take early retirement and denying them a pre or post deprivation hearing. Hence, the Bank is liable pursuant to 42 U.S.C. § 1983. These decisions were intentional and without any legally valid reasons. To add insult to injury, instead of fessing up to their decision, a falsely blamed the Board for the decision.

21. This decision not to allow Plaintiffs to take early retirement pursuant to Act 80 was not communicated to Plaintiffs. They were not provided an opportunity to be heard on whether their position was essential or any other reason to deny their request to take early retirement. Since all Plaintiffs had a property right to retire pursuant to Law 80, they had a right to be heard when said right was denied by Defendants intentional and unreasonable act of denying said retirement and then blaming the Board for the decision. If a person possesses a property interest, some form of the pre-deprivation process is required, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The need for a pre-depravation hearing comes from the balancing of (1) the private interest that will be affected and the interest of the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and (3) the government's interest. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543 (1985). In this case, the balancing of interest favored the pre-deprivation hearing, which was not provided by Defendants intentionally.

22. In addition, if Plaintiffs did not have a right to a pre-deprivation hearing, which they had a right to, they had a right to a post-deprivation hearing, which was not provided by Defendants. Although Plaintiffs sought meetings with Defendants, they were not given the type of hearing required by due process. "The fundamental requirement of due process is the

7

opportunity to be heard *at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge,* 424 U. S. 319*,* 433 *(1976),* quoting *Armstrong v. Manzo*, 380 U. S. 545, 552 (1965). This opportunity was not provided by Defendants, although they knew or should have known Plaintiffs had a right to said hearing, all in violation of 42 U.S.C. § 1983.

23. These decisions deprived Plaintiffs of their constitutional right to be heard and were made pursuant to Commonwealth law by state actors, in violation of 42 U.S.C. § 1983. As explained in more detail in the damages section, this not only has caused Plaintiffs not only pain and suffering but economic hardship since their retirement will be much less than pursuant to Act 80. All of Defendants actions were made under color of state law in violation of 42 U.S.C. § 1983.

## V. SECOND CAUSE OF ACTION-SUBSTANTIVE DUE PROCESS

24. Plaintiffs adopt by reference paragraphs 1-23 of the Complaint.

25. Act 80 provided Plaintiffs with a property right, to wit, take early retirement at 50% of their present salary. The Commonwealth illegally agreed to stop putting in effect Act 80 in its entirety. Even if this act was not illegal, the stipulation of December 2021 and September 2023, coupled with the letter of July of 2022, informing Plaintiffs that they could take early retirement pursuant to Act 80, created a property right for them protected by the 5th and 14th Amendment Due Process clause.

26. Plaintiffs had and have a property interest in the early retirement process established by Act 80 and the aforementioned stipulations. At some time between July 2022 and October 2023, Defendants conspired and decided not to allow Plaintiffs to take early retirement pursuant to Act 80. Alemañy, as President of the Bank, was its final policy maker and in conspiracy with others, including Defendants, took the decision not allow Plaintiffs to take

early retirement and denying them a pre or post deprivation hearing. Hence, the Bank is liable pursuant to 42 U.S.C. § 1983. These decisions were intentional and without any valid reasons. To add insult to injury, instead of fessing up to their decision, Defendants falsely blamed the Board for the decision.

27. This decision not to allow Plaintiffs to take early retirement pursuant to Act 80 was not communicated to Plaintiffs. Defendants conspired and decided not to provide Plaintiffs an opportunity to be heard on whether their position was essential or any other reason to deny their request to take early retirement. Since all Plaintiffs had a property right to retire pursuant to Law 80, etc., they had a right to be heard when said right was denied by Defendants intentional act of denying said retirement and then blaming the Board for the decision. Moreover, instead of informing Plaintiffs that this was their decision, they blamed the Board. These acts and omissions of due process denial and lying to Plaintiffs as to who took the decision not allow them to take early retirement pursuant to Act 80 and the aforesaid stipulations are shocking to the conscience in violation to the substantive due process clause of the U.S. Constitution and deprived Plaintiffs' of their property right to take early retirement.

28. These decisions deprived Plaintiffs of their constitutional right to be heard and were made pursuant to Commonwealth law by state actors, in violation of 42 U.S.C. § 1983. As explained in more detail in the damages section, this not only has caused Plaintiffs not only pain and suffering but economic hardship since their retirement will be much less than pursuant to Act 80. All of Defendants actions were made under color of state law in violation of 42 U.S.C. § 1983.

**VI. THIRD CAUSE OF ACTION-TORTS**

29. Plaintiffs adopt by reference paragraphs 1-28 of the Complaint.

30. Defendants acts and omissions have caused damages to Plaintiffs. Their acts and omissions are in violation of Article 1536 of the Puerto Rico Civil Code, 2020 Edition (the Code), 31 L.P.R.A. § 10801 and Article 1540 of the Code, 31 L.P.R.A. § of the 10805. Defendants had the duty to provide Plaintiffs with due process, did not do so and actualy conspired to deprive Plaintiffs of their constitutional rights. In addition, Defendants had the duty to provide Plaintiffs with truthful information as to whom denied them early retirement when in reality, they lied to them about who decided they could not take the early retirement. All these acts and omissions caused Plaintiffs the damages alleged, *infra*.

**VII. DAMAGES**

31.  Plaintiffs adopt by reference paragraphs 1-30 of the Complaint.

32. Plaintiff Jennifer Pérez Rivera works at the Bank. She was overjoyed when she was informed that she could take early retirement pursuant to Act 80. Jennifer was greatly disillusioned when she was informed that she would not be able to take the early retirement. She is in charge of her aging parents that need physical help with food, medicines, personal hygiene, transportation, economic aid. Since she found out she would not be able to take early retirement, she has had to incur in additional expenses for their care.

33. Defendants' actions have caused her great stress, anguish and anger. She cannot believe that the agency for which she has worked for so long would betray her and then lie as to who was responsible for her inability to take early retirement. This has caused her loss of sleep, discouragement, lack of interest in her work, personal and family conflicts. Her damages for emotional pain and suffering are no less than $1,000,000.

34. In addition, if Jennifer had been able to take early retirement pursuant to Act 80, she would receive $2,680.63 a month, whereas when she retires at age 65, she will only receive $1,555.03 a month. This amounts to a loss of income of $202,608 to age 80 in loss of income.

35. Joanna Rivera Pérez works at the Bank. She was overjoyed when she was informed that she could take early retirement pursuant to Act 80. Joanna was greatly disillusioned when she was informed that she would not be able to take the early retirement.

36. Defendants' actions have caused her great stress, anguish and anger. She cannot believe that the agency for which she has worked for so long would betray her and then lie as to who was responsible for her inability to take early retirement. Due to Defendants acts and omissions, Joanna has had to take therapy with a counselor. In addition, she is under psychiatric care, with a diagnosis of depression. She has been prescribed medication for said depression and sleep deprivation. Her damages for emotional pain and suffering are no less than $1,000,000.

37. In addition, if Joanna had been able to take early retirement pursuant to Act 80, she would receive $1,681.00 a month, whereas when she retires at age 65, she will only receive $718.65 a month. This amounts to a loss of income of $173,223.00 to age 80 in loss of income.

38. Ivette de L. Montalvo León works at the Bank. She was overjoyed when she was informed that she could take early retirement pursuant to Act 80. Ivette was greatly disillusioned when she was informed that she would not be able to take the early retirement.

39. Defendants' actions have caused her great stress, anguish and anger. She cannot believe that the agency for which she has worked for so long would betray her and then lie as to who was responsible for her inability to take early retirement. Due to Defendants acts and omissions, Ivette suffers from anxiety, insomnia, lack of interest in her work, great anger,

muscular spasms, among other symptoms. In addition, Ivette had planned on retiring with her husband but was unable. She also planned on helping her son with his children, since he needs help due to his psychological conditions. Also, Ivette plans have been interrupted, including that her husband was retired under Act 80 and know she's unable to fulfill their plans of taking retirement together. Moreover, this caused her economic hardship; Ivette have increased the use of her credit cards since she was sure that upon early retirement, she would be able to pay them off i.e., AEELA MASTERCARD, which was to be paid off with the savings and dividends of that account. Moreover, the economic plan she had with her husband has been discarded. Her damages for emotional pain and suffering are no less than $1,000,000.

40. In addition, if Ivette had been able to take early retirement pursuant to Act 80, she would receive $1,898.01 a month, whereas when she retires at age 65, she will only receive $915.84 a month. This amounts to a loss of income of $176,790.60 to age 80 in loss of income.

41. Diego Rosado Class works at the Bank. He was overjoyed when he was informed that he could take early retirement pursuant to Act 80. Diego was greatly disillusioned when he was informed that he would not be able to take the early retirement.

42. Defendants' actions have caused him great stress, anguish and anger. He cannot believe that the agency for which he has worked for so long would betray him and then lie as to who was responsible for his inability to take early retirement. Due to Defendants acts and omissions, Diego suffers insomnia, his blood pressure has been out of control, constant arguments with family and coworkers, lack of appetite, lack of interest in his job, depression that has resulted in his medical treatment. In addition, he was going to move to the west of the island to care for his ailing mother and brother but now is unable to do so. His damages for emotional pain and suffering are no less than $1,000,000.

44. In addition, if Diego had been able to take early retirement pursuant to Act 80, he would receive $1,176.38 a month, whereas when he retires at age 65, he will only receive $713.67 a month.  This amounts to a loss of income of $83,287.80 to age 80 in loss of income.

45. Nelly Colón Ortiz worked at the Bank at all times herein material. She was overjoyed when she was informed that she could take early retirement pursuant to Act 80. Nelly was greatly disillusioned when she was informed that she would not be able to take the early retirement.

46. Defendants' actions have caused her great stress, anguish and anger. She cannot believe that the agency for which she has worked for so long would betray her and then lie as to who was responsible for her inability to take early retirement. Due to Defendants acts and omissions, Nelly suffers from insomnia and depression. Due to all of this situation, Nelly Colón Ortiz has had to visit a psychiatrist every month. Her damages for emotional pain and suffering are no less than $1,000,000.

47. In addition, if Nelly had been able to take early retirement pursuant to Act 80, she would receive $3,937.00 a month, whereas when she retires at age 65, she will only receive $584.00 a month.  This amounts to a loss of income of $603,540 to age 80 in loss of income.

48. Griselle Laboy Blanc works at the Bank. She was overjoyed when she was informed that she could take early retirement pursuant to Act 80. Griselle was greatly disillusioned when she was informed that she would not be able to take the early retirement.

49. Defendants' actions have caused her great stress, anguish and anger. She cannot believe that the agency for which she has worked for so long would betray her and then lie as to who was responsible for her inability to take early retirement. When Griselle received the letter in 2022 informing her she could take early retirement, she began to plan for this. She bought a

reposed property in her hometown of Humacao, with the purpose of fixing it with the money she would be able to access upon retirement based on law 106. Since she sold a house to buy said apartment, now she has to pay $12,511.00 in taxes, which she would not have to pay if she had been told she could not retire since the start. Since she cannot fix the house in Humacao, Griselle has to continue to live in Guaynabo, paying a $1,000 mortgage plus $400 in utilities. All of this due to Defendants acts and omissions. Her damages for emotional pain and suffering are no less than $1,000,000.

50. In addition, if Griselle had been able to take early retirement pursuant to Act 80, she would receive $2,916.67 a month, whereas when she retires at age 65, she will only receive $1,425.02 a month. This amounts to a loss of income of $268,497.00 to age 80 in loss of income.

51. Myrna Liz Ortiz Cortés works at the Bank. She was overjoyed when she was informed that she could take early retirement pursuant to Act 80. Myrna Liz was greatly disillusioned when she was informed that she would not be able to take the early retirement.

52. Defendants' actions have caused her great stress, anguish and anger. She cannot believe that the agency for which she has worked for so long would betray her and then lie as to who was responsible for her inability to take early retirement. Due to Defendants acts and omissions, Myrna Liz suffers from insomnia, high blood pressure, arguments both at home and at work, depression for which she has had to get medical treatment, muscular pains, weight gain, anxiety, lack of desire to work or socialize. Her damages for emotional pain and suffering are no less than $1,000,000.

53. In addition, if Myrna Liz had been able to take early retirement pursuant to Act 80, she would receive $1,498.61 a month, whereas when she retires at age 65, she will only receive $724.04 a month. This amounts to a loss of income of $139,422.60 to age 80 in loss of income.

54. Samuel Fuentes Escobar works at Bank. He was overjoyed when he was informed that she could take early retirement pursuant to Act 80. Samuel was greatly disillusioned when he was informed that he would not be able to take the early retirement.

55. Defendants' actions have caused her great stress, anguish and anger. He cannot believe that the agency for which he has worked for so long would betray him and then lie as to who was responsible for his inability to take early retirement. Due to Defendants acts and omissions, Samuel suffers from stress and insomnia. His damages for emotional pain and suffering are no less than $1,000,000.

56. In addition, if Samuel had been able to take early retirement pursuant to Act 80, he would receive $1,387.00 a month, whereas when he retires at age 65, he will only receive $537.92 a month. This amounts to a loss of income of $152,834.40 to age 80 in loss of income.

57. Rodolfo Vidal Soto works at Bank. He was overjoyed when she was informed that he could take early retirement pursuant to Act 80. Rodolfo was greatly disillusioned when he was informed that he would not be able to take the early retirement.

58. Defendants' actions have caused her great stress, anguish and anger. He cannot believe that the agency for which he has worked for so long would betray him and then lie as to who was responsible for his inability to take early retirement. Due to Defendants acts and omissions, Rodolfo suffers from an aggravation of his diabetes, high blood pressure, insomnia, as well as difficulty driving. His damages for emotional pain and suffering are no less than $1,000,000.

59. In addition, if Rodolfo had been able to take early retirement pursuant to Act 80, he would receive $1,800 a month, whereas when he retires at age 65, he will only receive $1,029 a month. This amounts to a loss of income of $138,780 to age 80 in loss of income.

60. Carmen M. Crespo Figueroa works at Bank. She was overjoyed when she was informed that she could take early retirement pursuant to Act 80. Carmen was greatly disillusioned when she was informed that she would not be able to take the early retirement.

61. Defendants' actions have caused her great stress, anguish and anger. She cannot believe that the agency for which she has worked for so long would betray her and then lie as to who was responsible for her inability to take early retirement. Due to Defendants acts and omissions, Carmen's phycological condition that has been aggravated and has had to increase treatment. Her damages for emotional pain and suffering are no less than $1,000,000.

62. In addition, if Carmen had been able to take early retirement pursuant to Act 80, she would receive $20,167.18 a year, whereas when she retires at age 65, she will only receive $9,120.72 a year. This amounts to a loss of income of $165,696.90 to age 80 in loss of income.

63. Jessica Nazario works at Bank. She was overjoyed when she was informed that she could take early retirement pursuant to Act 80. Jessica was greatly disillusioned when she was informed that she would not be able to take the early retirement.

64. Defendants' actions have caused her great stress, anguish and anger. She cannot believe that the agency for which she has worked for so long would betray her and then lie as to who was responsible for her inability to take early retirement. Due to Defendants acts and omissions, Jessica has been undergoing treatment for depression, panic attacks, lack of concentration, irritation at work and home. In addition, Jessica has been diagnosed with fibromyalgia due to stress, which cause her tiredness and lack of interest at work. Jessica has to

take medication to reduce it. In addition, Jessica invested in an apartment as a future income source but since she cannot retire she was not able to access funds of law 106, she has not been able to fix for renting. In addition, she has had to lower her vacation and sick leave levels due to Defendants' acts and omissions, as well as she has had to continue helping her childrens' school costs witch with a reduction of income would have allowed them financial aid. Her damages for emotional pain and suffering are no less than $1,000,000.

65. In addition, if Jessica had been able to take early retirement pursuant to Act 80, she would receive $2,293.56 a month, whereas when she retires at age 65, she will only receive $1,190.44 a month. This amounts to a loss of income of $198,561.60 to age 80 in loss of income.

66. José Rubén Díaz works at Bank. He was overjoyed when she was informed that he could take early retirement pursuant to Act 80. Rubén was greatly disillusioned when he was informed that he would not be able to take the early retirement.

67. Defendants' actions have caused him great stress, anguish and anger. He cannot believe that the agency for which he has worked for so long would betray him and then lie as to who was responsible for his inability to take early retirement. Due to Defendants acts and omissions, Rubén suffers from insomnia and profound sadness. His damages for emotional pain and suffering are no less than $1,000,000.

68. In addition, if Rubén had been able to take early retirement pursuant to Act 80, she would receive $$1,176.38 a month, whereas when she retires at age 65, he will only receive $487.17 a month.  This amounts to a loss of income of $124,057.80 to age 80 in loss of income.

69. Carlos Alvarez Flores works at Bank. He was overjoyed when he was informed that he could take early retirement pursuant to Act 80. Carlos was greatly disillusioned when he was informed that he would not be able to take the early retirement.

70. Defendants' actions have caused him great stress, anguish and anger. He cannot believe that the agency for which he has worked for so long would betray him and then lie as to who was responsible for his inability to take early retirement. Due to Defendants acts and omissions, Carlos suffers from depression and insomnia. He has not sought medical help due to its cost. His damages for emotional pain and suffering are no less than $1,000,000.

71. In addition, if Carlos had been able to take early retirement pursuant to Act 80, he would receive $1,208.05 a month, whereas when she retires at age 65, he will only receive $439.03 a month. This amounts to a loss of income of $138,423.60 to age 80 in loss of income.

72. In addition, Plaintiffs have a right to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988. Said attorneys' fees are demanded in this complaint.

**VIII. JURY DEMAND**

73. Plaintiffs demand that all questions of fact be decided by a jury.

WHEREFORE: Plaintiff respectfully requests from the Honorable Court that it enter judgment against defendants in the fashion specified in paragraphs 32-74 of this complaint, plus interest and attorneys fees.

Respectfully submitted on this 19th day of June , 2024.

/s *John E. Mudd*
John E. Mudd
Bar Number: 201102
Attorney for Plaintiffs
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787)413-1673
 johnmuddlaw@gmail.com