UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

JENNIFER PÉREZ RIVERA; MYRNA LIZ ORTIZ
CORTÉS; IVETTE DE L. MONTALVO LEÒN;
RODOLFO VIDAL SOTO; GRISELLE LABOY
BLANC; CARMEN M. CRESPO FIGUEROA;
DIEGO ROSADO CLASS; JESSICA NAZARIO;
JOANNA RIVERA PÉREZ; SAMUEL ENRIQUE
FUENTES ESCOBAR; CARLOS A. ALVAREZ
FLORES; NELLY COLÓN ORTIZ; AND JOSÉ
RUBÉN DÍAZ,

        Plaintiffs,

  -v-

                                  Case No. 3:24-cv-01273-LTS

LUIS ALEMAÑY, in his personal character,
MIGUEL L. VARGAS JIMÉNEZ, in his personal
capacity, ANTONIO R. PIAR REYES, in his
personal capacity, GRETEL M. CATHIAR
AND ECONOMIC DEVELOPMENT BANK
FOR PUERTO RICO,

        Defendants.

------------------------------------------------------------x

MEMORANDUM OPINION AND ORDER GRANTING THE AMENDED MOTION TO DISMISS

        Pending before the Court is the *Amended Motion to Dismiss* (Docket Entry No.

35) (the "Motion"), filed by Luis Alemañy, Gretel M. Cathiard, Antonio R. Piar Reyes,[1] and the

Economic Development Bank for Puerto Rico (collectively, the "Moving Defendants").[2]  Miguel

---

[1]    Moving Defendants refer to themselves in their motion papers as Luis Alemañy González, Gretel M. Cathiard Alzola, and Antonio Piar Reyes.  (See, e.g., Mot. at 4; Reply at 1.)

[2]    All docket entry references are to those in Case No. 24-1273, unless otherwise noted.

L. Vargas Jiménez ("Vargas" and, together with the Moving Defendants, the "Defendants") joins in the Motion (Docket Entry No. 36) (the "Vargas Joinder").

The Motion requests entry of an order dismissing, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint (Docket Entry No. 1) (the "Complaint") filed herein by Jennifer Pérez Rivera, Myrna Liz Ortiz Cortés, Ivette de L. Montalvo León, Rodolfo Vidal Soto, Griselle Laboy Blanc, Carmen M. Crespo Figueroa, Diego Rosado Class, Jessica Nazario, Joanna Rivera Pérez, Samuel Enrique Fuentes Escobar, Carlos A. Alvarez Flores, Nelly Colón Ortiz, and José Rubén Díaz (collectively, the "Plaintiffs").  Defendants further seek dismissal pursuant to Rule 12(b)(1), which was raised for the first time in the reply (Docket Entry No. 41) (the "Reply"), for lack of subject matter jurisdiction.  Plaintiffs oppose the Motion (Docket Entry No. 38) (the "Objection").

For the reasons stated below, the Court has subject matter jurisdiction of this action pursuant to section 306(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2166(a).[3]  The Complaint pertains to certain stipulations the Court approved in an adversary proceeding (Adv. Proc. No. 21-119) (the "Adversary Proceeding") commenced by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") in connection with the Commonwealth's Title III case that sought to stop, among other things, the implementation of Act 80-2020 (Docket Entry No. 1-3 in Adv. Proc. No. 21-119) ("Act 80") as contrary to PROMESA.  The Court had subject matter jurisdiction of the Adversary Proceeding pursuant to section 306 of PROMESA, which it

---

[3]     PROMESA is codified at 48 U.S.C. § 2101 et seq.  References herein to PROMESA section numbers are to the uncodified version of the legislation, unless otherwise indicated.

retained over the enforcement of the stipulations.[4]  (See Docket Entry No. 6 in Adv. Proc. No. 21-119 (the "December 2021 Stipulation") ¶ 9 ("The Title III Court shall retain subject matter jurisdiction to enforce this agreement."); Docket Entry No. 39 in Adv. Proc. No. 21-119 ¶ X(B) ("[T]he Government agrees that this Court shall retain subject matter jurisdiction to enforce the terms of this Interim Stipulation, the Final Stipulation, and, upon its entry, the Final Order."); Docket Entry No. 59 in Adv. Proc. No. 21-119 (the "Final Stipulation") ¶¶ XI, XIII (providing that the parties consent to the Title III Court's retention of subject matter jurisdiction to enforce the terms of the Final Stipulation).)

The Court has carefully considered all submissions made in connection with the Motion and, for the reasons discussed below, the Moving Defendants' Motion, together with the Vargas Joinder, is granted and the Complaint is dismissed.

BACKGROUND

The following recitation of facts is drawn from the Complaint and exhibits attached thereto, unless otherwise specified.

1.  Act 80 and JR 33

Act 80, which passed on August 3, 2020, provided for the early retirement of employees of certain agencies and public corporations of the government of Puerto Rico (the "Government").  (Compl. ¶ 9.)  Under Act 80, qualifying non-essential employees would be able to retire with 50% of their salary at their current age, instead of waiting until age 65 and retiring with 38% or less.  (Compl. ¶ 9.)  Employees could elect to participate so long as certain criteria

---

[4]      References to the "Title III Court" in the Adversary Proceeding are to this Court.

were met, and agencies were obligated to guarantee that participating employees satisfied the eligibility requirements set forth therein.  (Act 80, Arts. 5, 8.)

To implement the early retirement program, Article 12 of Act 80 required the administrator of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the executive director of the Office of Management and Budget ("OMB") to issue a joint circular letter that would establish the necessary procedures, terms, and forms to carry out Act 80 and its provisions.  (Act 80, Art. 12.)  On October 14, 2020, ERS and OMB issued Circular Letter No. 2021-1 (Docket Entry No. 1-23 in Adv. Proc. No. 21-119 ("CL 2021-1")) to set forth a process for implementing Act 80.  (Compl. ¶ 9.)

Circular Letter No. 2021-2 (Docket Entry No. 1-28 in Adv. Proc. No. 21-119 ("CL 2021-2")), which was issued on November 9, 2020, amended CL 2021-1 and prohibited employers from allowing eligible employees to separate from service until after the passage of the deadline for qualifying employees to request early retirement.  (Compl. ¶ 9; CL 2021-2 at 2.) This deadline was extended to January 22, 2021, by Circular Letter No. 2021-3 (Docket Entry No. 1-34 in Adv. Proc. No. 21-119 ("CL 2021-3")), issued on December 14, 2020, which also made clear that Act 80 would not be fully implemented until an agreement was reached with the Oversight Board.  (Compl. ¶ 9; CL 2021-3 at 1.)  Rather, the Government would work, after the expiration of the deadline, to quantify the number of employees seeking early retirement and ascertain any projected savings prior to the program going into effect.  (CL 2021-3 at 1.)  The terms of CL 2021-3 reflected the Government's agreement in November 2020 to not implement Act 80 without the Oversight Board's consent.  (CL 2021-3 at 1.)

Each Plaintiff is an employee of the Economic Development Bank for Puerto Rico ("EDB") and a resident of the Commonwealth of Puerto Rico.  (Compl. ¶ 3.)  Plaintiffs

indicate that they each qualified for early retirement under Act 80, which they timely requested prior to the January 22, 2021 deadline, and that they were all notified by EDB that their positions were non-essential.  (Compl. ¶ 9.)

Approximately one year later, on December 15, 2021, Joint Resolution 33 (Docket Entry No. 1-40 in Adv. Proc. No. 21-119) ("JR 33"), formerly known as Senate Joint Resolution 171, was signed into law and required the partial implementation of Act 80 by January 31, 2022.  (See JR 33 § 2 (providing for the partial implementation of Act 80 within 30 business days of its enactment); *Financial Oversight and Management Board for Puerto Rico's Informative Motion Concerning Act 80-2020 and JR 33-2021*, Docket Entry No. 4 in Adv. Proc. No. 21-119 (the "Informative Motion") ¶ 2 (indicating that JR 33 established a deadline of January 31, 2022).)  The preamble to JR 33 made clear that, at the time, Act 80 had not yet gone into effect and that its full implementation was postponed pending the Government reaching "certain understandings with the [Oversight] Board related to the program's scope and impact." (JR 33 at 2.)

2.    The Adversary Proceeding, Stipulations, and July 2022 Letter

On December 20, 2021, the Oversight Board commenced its Adversary Proceeding to stop the implementation of Act 80.  (Compl. ¶ 10.)  The Adversary Proceeding was ultimately resolved consensually.  On December 28, 2021, the Court approved the December 2021 Stipulation among the Oversight Board, then-Governor Pedro Pierluisi Urrutia (the "Governor"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and OMB that dismissed the Adversary Proceeding complaint with prejudice and invalidated Act 80 and JR 33 except as provided for therein.  (Compl. ¶ 11; Dec. 2021 Stip. ¶ 4.)  The December 2021 Stipulation provided that, notwithstanding the invalidation of the statute and resolution, the

parties shall "endeavor to reach an agreement" on a means of implementation and required the Governor, AAFAF, and OMB to provide, on a per agency basis, descriptions of proposed positions to be eliminated along with projected net savings.  (Compl. ¶ 12.)  To the extent the parties "mutually agree[d]" on the proposed eliminated positions, savings, and the satisfaction of governing metrics, the stipulation further required parties to use their "respective best efforts to concur on a means of implementation" within 45 days of agreement.  (Compl. ¶ 12.)  The December 2021 Stipulation thus invalidated Act 80 prior to the January 31, 2022 deadline set forth in JR 33 for its partial implementation but also contemplated possible future implementation if the parties were to agree on methods and metrics, as described in the December 2021 Stipulation.

Subsequent to Act 80's invalidation, a circular letter was issued on July 22, 2022 that established the first phase of Act 80's implementation.[5]  (Compl. ¶ 13.)  The July 22, 2022 circular letter was issued, in part, to gather information that would assist in the Government's efforts to reach agreement with the Oversight Board.  (Mot. at 8-9.)  In July 2022, all Plaintiffs received a letter (the "July 2022 Letter") informing them that they qualified for early retirement because their positions were non-essential.  (Compl. ¶ 14.)

On September 25, 2023, the Court approved a further interim stipulation (Docket Entry No. 39 in Adv. Proc. No. 21-119) (the "September 2023 Stipulation") between the Oversight Board and the Governor and AAFAF.  (Compl. ¶ 13.)  The September 2023 Stipulation detailed the parties' progress and established the next steps for the parties to reach

---

[5]    At the time CL 2021-3 was issued on December 14, 2020, three phases were contemplated.  (See CL 2021-3 at 1 (indicating that phases one and two were intended to identify interested employees, and that the third phase would not be implemented until an agreement was reached with the Oversight Board).)

final agreement on the partial implementation of Act 80 in accordance with the December 2021 Stipulation.  (Sept. 2023 Stip. ¶ 16.)  Among other things, it noted that the Governor and AAFAF had provided the Oversight Board with a list of proposed eliminated positions, several hundred of which the Oversight Board had questioned.  (Sept. 2023 Stip. ¶ 16(III)(B).)  Moreover, following further discussion and disclosure by the Governor and AAFAF, the parties reached agreement on which disputed positions would be included on the final list, and a revised list of positions was provided to the Oversight Board on December 21, 2022.  (Sept. 2023 Stip. ¶¶ 16(III)(C) & (D).)  The September 2023 Stipulation required the Oversight Board, the Governor, and AAFAF to file a stipulation confirming final agreement on the partial implementation of Act 80 and request the Court to approve the same.  (Sept. 2023 Stip. ¶ 16(IX).)

On October 5, 2023, Circular Letter 2024-02 was issued, establishing the second phase of implementation of Act 80.  (Compl. ¶ 13.)  One day later, Plaintiffs received a letter from EDB notifying them that the Oversight Board deemed their positions essential, and that they were, therefore, ineligible to retire early pursuant to Act 80.  (Compl. ¶ 14.)  In response, Plaintiffs requested information from the Oversight Board and were notified on December 22, 2023, that only non-essential positions could be eliminated, and the "Government and the various agencies and public corporations" determined which positions these would be.  (Compl. ¶ 14.)

Plaintiffs maintain that Defendants conspired at some point between July 2022 and October 2023 to not allow Plaintiffs to take early retirement, a decision that was not communicated to them until their receipt of EDB's letter.  (Compl. ¶ 15.)  They further allege that Defendants were untruthful in that, contrary to Defendants' assertions, it was Defendants who were the ultimate decisionmakers as opposed to the Oversight Board.  (See Compl. ¶ 17.)

Defendants comprise certain current and former executives and employees of EDB, a Puerto Rican governmental entity, as well as EDB itself.[6]  (See Compl. ¶¶ 4-8.)

On March 22, 2024, the Court approved the Final Stipulation between the Oversight Board, the Governor and AAFAF, as well as the Municipal Revenues Collection Center.[7]  (Compl. ¶ 16; Final Stip. at 2.)  The Final Stipulation reflected the final agreement between the Oversight Board and the Governor and AAFAF concerning the partial implementation of Act 80 and JR 33.  (Final Stip. ¶ 11.)  It provided that Act 80 and JR 33 could only be partially implemented in a manner consistent with the December 2021, September 2023, and Final Stipulations and made clear that Act 80 and JR 33, consistent with the December 2021 Stipulation, were "null and void" except as otherwise provided in the September 2023 and Final Stipulations.  (Final Stip. ¶ 11(VI).)  Relevant here, the Final Stipulation set forth which positions would be eliminated.  (Compl. ¶ 16.)  The Governor and AAFAF had provided a final list of positions for elimination, which the Oversight Board reviewed and accepted on February 23, 2024.  (Final Stip. ¶ 11(I)(C).)  By its terms, the Final Stipulation made clear that participation in the partial implementation of Act 80 would be limited solely to those employees included on the final list of eliminated positions the Oversight Board accepted.  (Final Stip. ¶ 11(VII).)  No Plaintiff was included on the final list and, as a result, none was eligible to take early retirement pursuant to Act 80.  (Compl. ¶ 16.)

---

[6]    Defendants proffer that EDB is not a government agency but rather a "public corporation separate from the central government."  (Mot. at 6 n.6.)  Plaintiffs do not address this assertion in their Objection.

[7]    On January 28, 2025, the Court entered an order (Docket Entry No. 76 in Adv. Proc. No. 21-119) approving an amended and updated Exhibit A to the Final Stipulation that contained certain administrative corrections.

3. <u>Procedural Background</u>

On June 20, 2024, Plaintiffs filed the Complaint, which asserts three causes of action against the Defendants:

- The first cause of action ("Count I") asserts a claim under 42 U.S.C. § 1983 for violation of procedural due process.  (Compl. ¶¶ 18-23.)

- The second cause of action ("Count II") asserts a claim under 42 U.S.C. § 1983 for violation of substantive due process.  (Compl. ¶¶ 24-28.)

- The third and final cause of action ("Count III") asserts a state law tort claim under Article 1536 of the Puerto Rico Civil Code of 2020, P.R. LAWS ANN. tit. 31 § 10801 ("Article 1536") and Article 1540 of the Puerto Rico Civil Code of 2020, P.R. LAWS ANN. tit. 31 § 10805 ("Article 1540").  (Compl. ¶¶ 29-30.)

Counts I and II are predicated on the contention that Act 80 and, separately, the December 2021 and September 2023 Stipulations "coupled with" the July 2022 Letter, conferred on Plaintiffs a property interest in early retirement protected by the due process clauses of the Fifth and Fourteenth Amendments.[8]  (Compl. ¶¶ 19-20, 25-26.)  Plaintiffs allege that they were denied an opportunity to be heard on the denial of early retirement benefits and whether they were essential employees, that Defendants conspired in such denial, and that Plaintiffs consequently experienced pain and suffering and economic hardship.  (Compl. ¶¶ 20-23, 26-28.)  Count II further alleges that the denial of due process, Defendants' false attribution to the Oversight Board of the decision to deny Plaintiffs early retirement, and the December 2021 and

---

[8]    The Objection centers its discussion solely on the December 2021 Stipulation and the July 2022 Letter.  (<u>See</u> Obj. ¶ 15.)  However, because the Complaint also relies on the September 2023 Stipulation, the Court will address all three in a manner consistent with the allegations set forth in the Complaint.  <u>See</u> <u>Díaz-Zayas v. Municipality of Guaynabo</u>, 600 F. Supp. 3d 184, 195 (D.P.R. 2022) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); <u>cf.</u> <u>Katz v. Belveron Real Est. Partners, LLC</u>, 28 F.4th 300, 309 (1st Cir. 2022) (noting that the amendment of a complaint through an opposition to a motion for summary judgment is a "practice . . . routinely rejected").

September 2023 Stipulations were all "shocking to the conscience." (Compl. ¶ 27.) Finally,

Count III alleges that Defendants breached duties to provide Plaintiffs with due process and

truthful information regarding who denied Plaintiffs early retirement, resulting in damages to

Plaintiffs. (Compl. ¶ 30.)

In connection with the foregoing, the Complaint seeks judgment against

Defendants and payment of damages plus interest and reasonable attorneys' fees pursuant to 42

U.S.C. § 1988. (Compl. at 18.) Damages sought for each Plaintiff comprise (i) no less than

$1,000,000 for emotional pain and suffering, and (ii) an amount for loss of income equivalent to

what each Plaintiff would have received by age 80 if he or she retired early pursuant to Act 80

versus retirement at age 65. (See Compl. ¶¶ 32-71.) The Complaint also requests a trial of all

facts by jury. (Compl. ¶ 73.)

The action, which was originally assigned to Judge Camille L. Velez-Rive of the

United States District Court for the District of Puerto Rico, was transferred to this Court on

January 22, 2025, because it directly pertains to the Adversary Proceeding and matters of which

this Court has retained subject matter jurisdiction. (See *Opinion and Order*, Docket Entry No.

30.)

## DISCUSSION

Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief may be granted. When presented with

motions to dismiss under both Rules 12(b)(1) and 12(b)(6), courts should ordinarily decide

jurisdictional issues under the former before turning to merits under the latter. Deniz v.

Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002).

While Defendants' request for dismissal on grounds of lack of subject matter jurisdiction was only raised for the first time in the Reply, "[o]bjections to subject-matter jurisdiction . . . may be raised at any time." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). Indeed, questions over a court's subject matter jurisdiction "must be resolved no matter how tardily . . . raised." Pollard v. Law Off. of Mandy L. Spaulding, 766 F.3d 98, 101-02 (1st Cir. 2014) (addressing a lack of standing argument raised in a reply brief). If a court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. FED. R. CIV. P. 12(h)(3). The Court thus turns first to the jurisdictional questions raised under Rule 12(b)(1).

1. Rule 12(b)(1)

As a general matter, Rule 12(b)(1) of the Federal Rules of Civil Procedure serves as the "proper vehicle for challenging a court's subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). Such challenges may be facial or factual, the former of which requires an assessment of whether a plaintiff's version of facts, accepted to be true, provides a basis for subject matter jurisdiction. Id. at 363-64. When confronted with a facial challenge, a court shall "credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010); see Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth., 4 F.4th 63, 69 (1st Cir. 2021) (indicating that, with facial challenges where a movant raises a question of law without contesting the facts, the analysis is "essentially the same" as one under Rule 12(b)(6)). A court may "consider whatever evidence has been submitted, such as the depositions and exhibits

submitted" in making its determination.  Merlonghi, 620 F.3d at 54 (quoting Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).  "When a defendant moves to dismiss for lack of federal subject matter jurisdiction, the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (internal quotation marks omitted) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).

Here, Defendants' challenge to subject matter jurisdiction is facial and does not seek to controvert the accuracy of the facts asserted but, rather, challenges their sufficiency. Specifically, Defendants contend that dismissal of the Complaint for lack of subject matter jurisdiction is appropriate for two reasons.  First, they maintain that Plaintiffs lack Article III standing because the Complaint does not allege, explicitly or implicitly, that Plaintiffs' positions at EDB were non-essential.  (Reply at 4-5.)  Without this "foundational allegation," Defendants assert that there can be no deprivation of retirement benefits or process and therefore, no injury. (Reply at 5-6.)  Second, Defendants further argue that there is a lack of a live controversy, because it is undisputed that Act 80 was invalidated and the stipulations Plaintiffs rely on cannot confer substantive rights.  (Reply at 6.)  The Court addresses each in turn.

a.  Lack of Article III Standing

The Court finds that Plaintiffs have sufficiently alleged that they have suffered a cognizable injury in fact, conferring standing, and declines to dismiss the Complaint on lack of standing grounds.

Article III of the United States Constitution limits federal court jurisdiction to actual cases or controversies.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016).  Rooted in this "case or controversy" requirement is the doctrine of standing.  Id. at 338.  To establish

Article III standing, a plaintiff must demonstrate that he or she suffered an injury in fact that is "fairly . . . trace[able] to the challenged action of the defendant" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (alterations in original) (internal quotation marks and citations omitted). An injury in fact is defined to be "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (internal quotation marks and citations omitted).

Here, the Complaint alleges that each Plaintiff was (i) entitled to and timely requested early retirement under Act 80; (ii) notified that he or she was non-essential and eligible, including after Act 80's invalidation; (iii) subsequently notified that he or she was instead essential and ineligible; and (iv) ultimately denied an opportunity to be heard on the determination that his or her position was essential despite having an alleged property interest in early retirement benefits. (See Compl. ¶¶ 9, 14, 19-21, 25-27.) This is sufficient to support standing. Plaintiffs have adequately alleged an injury—the lack of opportunity to be heard on the denial of early retirement benefits despite holding an alleged property interest in the same— that is both concrete and particularized. See Lujan, 504 U.S. at 560. Whether they can succeed on their claim is another matter. However, "[a]n individual's plausible allegations of a personal injury will generally suffice to plead an injury in fact, even if the claim is ultimately lacking on the merits." Hochendoner v. Genzyme Corp., 823 F.3d 724, 734 (1st Cir. 2016); see also Universal Ins. Co. v. Dep't of Just., 866 F. Supp. 2d 49, 58 (D.P.R. 2012) (stating that, for purposes of establishing standing at the pleading stage, "[p]laintiffs do not need to prove that they have a property interest" but rather "only need to state 'general factual allegations' to establish that they have standing" (quoting Lujan, 504 U.S. at 561)).

Moreover, contrary to Defendants' assertions, Plaintiffs' failure to specifically allege that their positions were non-essential does not alter this conclusion. The determination as to whether Plaintiffs' positions were or were not essential was never one for Plaintiffs to make, and Plaintiffs do not base their claim of a property interest in any self-designation as essential. (See, e.g., Compl. ¶ 9 (alleging that "[a]ll Plaintiffs request early retirement pursuant to Act 80 . . . and all were notified by Defendant Bank that their positions were not essential").) Thus, Plaintiffs' subjective beliefs about whether their positions were non-essential are irrelevant to whether Plaintiffs have adequately alleged injury for purposes of standing. The Court, therefore, declines to dismiss the Complaint for lack of Article III standing.

b. Lack of Live Controversy

Plaintiffs have also demonstrated sufficiently the existence of a live controversy. As a general matter, "[f]ederal judges decide only live controversies that will have a real effect on real parties in interest." Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021). Therefore, to the extent "a case loses its live-controversy character at any point in the proceedings," the doctrine of mootness will generally oust federal courts of jurisdiction and require dismissal. Id. at 8 (citing Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 335 (1980)). A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, such that it [is] impossible for the court to grant any effectual relief whatever to a prevailing party." In re Ruiz, 83 F.4th 68, 73 (1st Cir. 2023) (alteration in original) (internal quotation marks and citation omitted). "The 'heavy' burden of showing mootness" rests on "the party raising the issue." Bos. Bit Labs, 11 F.4th at 8. Like standing, mootness is also a matter ordinarily addressed prior to any determination on the merits. See ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52 (1st Cir. 2013).

Here, as discussed, the Complaint alleges that Plaintiffs were initially notified that their positions were non-essential, a determination that was subsequently altered following the invalidation of Act 80, and that they were deprived of an opportunity to be heard on the matter. The relief sought would, if granted, redress the injury alleged.  As noted, the Complaint seeks damages for pain and suffering as well as compensation for loss of income that would put Plaintiffs in at least the position they would have been in had they been able to retire early under Act 80.  (See Compl. ¶¶ 32-71 (detailing damages sought).)

Defendants rest their assertion that there is a lack of live controversy on Act 80's undisputed invalidation and Plaintiffs' reliance on the December 2021 and September 2023 Stipulations, which they contend cannot confer substantive rights.  (See Reply 4-6.)  However, the Complaint alleges that Plaintiffs were conferred a property interest in early retirement benefits pursuant to the July 2022 Letter, which was issued after Act 80 was invalidated.  (See Compl. ¶¶ 19, 25.)  Indeed, the July 2022 Letter notified Plaintiffs that they were non-essential and eligible for early retirement.  (See Compl. ¶ 14.)  Accordingly, considering these factual allegations, Defendants' contention that the issues presented in the Complaint are moot is unavailing.

For the reasons discussed, the Court denies the Motion insofar as it seeks dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and turns now to the merits.

2.  Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation omitted); see also id. (noting that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (alteration in original) (citation omitted).  In ruling, a court may consider "facts and documents that are part of or incorporated into the complaint" as well as "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice."[9]  Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (citations omitted).

a.  Counts I and II

Counts I and II assert claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of procedural and substantive due process, respectively, pursuant to the Fifth and Fourteenth Amendments.  (See Compl. ¶¶ 19, 23, 25, 28.)  Section 1983 allows "individuals to 'sue certain persons for depriving them of federally assured rights' under color of state law."  Fincher v. Town of Brookline, 26 F.4th 479, 485 (1st Cir. 2022) (citation omitted).  It does not itself constitute a "source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 394 (1989) (internal

---

[9]    Accordingly, the Court considers, as part of its analysis, the record of the Adversary Proceeding, which is a matter of public record.

quotation marks omitted) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  To

establish a Section 1983 claim, a party must show: "(1) that the complained-of conduct was

committed under the color of state law, and (2) that such conduct violated his constitutional or

federal statutory rights." Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016) (citation

omitted).  "Puerto Rico is considered a state for [S]ection 1983 purposes." Redondo-Borges v.

U.S. Dep't of Hous. & Urb. Dev., 421 F.3d 1, 7 (1st Cir. 2005).

As a threshold matter, Defendants do not dispute that they were acting under the

color of state law.  (See, e.g., Mot. at 15-18 (arguing only that Plaintiffs have failed to plead they

were deprived of an acquired right); Reply at 3-4, 7-8 (contending that Plaintiffs have failed to

allege the existence of a constitutionally protected property interest).)  Indeed, the individual

Defendants assert that the doctrine of qualified immunity shields them from liability.  (See Mot.

at 21-23.)  The qualified immunity doctrine, when it is applicable, protects government officials

with the aim of "free[ing] [them] from the concerns of litigation." Maldonado v. Fontanes, 568

F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 556 U.S. at 685).

The Court's merits inquiry thus begins with whether Plaintiffs have pleaded

plausibly that their federal constitutional rights have been violated.

### i.    Fifth Amendment Due Process Claims

The Due Process Clause of the Fifth Amendment provides, in relevant part, that

"[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S.

CONST. amend. V.  It is "not disputed that the fundamental protections of the United States

Constitution extend to the inhabitants of Puerto Rico," including the "constitutional guarantees

of due process." Rodriguez v. Popular Democratic Party, 457 U.S. 1, 7 (1982) (citations

omitted).  The protections of the Fifth Amendment Due Process Clause, however, "appl[y] 'only

to actions of the federal government—not to those of state or local governments.'" <u>Martínez-Rivera v. Sánchez Ramos</u>, 498 F.3d 3, 8 (1st Cir. 2007) (quoting <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 687 (9th Cir. 2001)).

   Here, the Complaint does not allege that any Defendant is a federal actor, indicating instead that each of the individual Defendants is or was an executive or employee of Defendant EDB, which itself is a Puerto Rican "Governmental entity created by law." (Compl. ¶¶ 4-8; <u>see</u> <u>Compl.</u> ¶¶ 14-15 (highlighting that the Government, along with its agencies and public corporations, participated in determining which positions would be eliminated and alleging that it was Defendants, including EDB, who made the decision as to Plaintiffs).) Given the absence of such an allegation, Counts I and II are dismissed to the extent they assert claims against Defendants for violations of due process under the Fifth Amendment. <u>See, e.g.,</u> <u>Martínez-Rivera</u>, 498 F.3d at 8-9 (affirming a lower court's dismissal of claims arising under the Fifth Amendment against defendants who were not alleged to be federal government actors).

   ii. <u>Fourteenth Amendment Due Process Claims</u>

   The Due Process Clause of the Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Its guarantees, which apply to residents of Puerto Rico, contain both substantive and procedural components. <u>See</u> <u>Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero</u>, 426 U.S. 572, 600 (1976) (stating that "[i]t is clear" that the due process protections of the Fifth and Fourteenth Amendments extend to Puerto Rican residents); <u>Pagán v. Calderón</u>, 448 F.3d 16, 32 (1st Cir. 2006) (noting both aspects of the Fourteenth Amendment Due Process Clause).

Here, Counts I and II of the Complaint assert procedural and substantive due process claims, respectively, that are predicated on the alleged deprivation of early retirement benefits without an opportunity to be heard.  Central to both claims is whether Plaintiffs have a property interest in such early retirement benefits.  See Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002) ("To establish a due process claim, substantive or procedural, [plaintiffs] must first establish a property interest." (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972))).  Indeed, to plead a claim for a violation of procedural due process, a plaintiff "must allege facts which, if true, establish . . . a property interest of constitutional magnitude and . . . depriv[ation] of that property interest without due process of law."  Miller, 833 F.3d at 52 (quoting Clukey v. Town of Camden, 717 F.3d 52, 54-55 (1st Cir. 2013)).  Meanwhile, to assert a valid substantive due process claim, a plaintiff must show "the deprivation of an established . . . property interest" that "occurred through governmental action that shocks the conscience."  Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (citing Pagán, 448 F.3d at 32).

Property interests are created and defined not by the Constitution but by "existing rules or understandings that stem from an independent source such as state law."  Roth, 408 U.S. at 577.  Therefore, "[a] statute or regulation may create an enforceable contractual right that serves as the source of a constitutionally protected property interest."  Vázquez-Velázquez v. P.R. Highway & Transp. Auth., No. CV 15-1727 (MEL), 2021 WL 3501380, at *5 (D.P.R. Aug. 9, 2021) (citations omitted).  To establish that "a statutorily created benefit is a property interest, a person must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008)

(internal quotation marks omitted) (quoting Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992)).

Courts in Puerto Rico recognize property interests in retirement plans. See, e.g., Bayron Toro v. Serra, 19 P.R. Offic. Trans. 646, 649 (P.R. 1987) (acknowledging that a "beneficiary of a retirement plan has a property interest of a contractual nature protected by the constitutional guarantee against impairment of contractual obligations"). Notwithstanding this general recognition, they have also held that the government "may amend the terms and conditions of the retirement, if such amendments are reasonable and seek to further the actuarial solvency of the system." Id. at 660. In this instance, Plaintiffs allege that they hold a property interest in early retirement benefits pursuant to (i) Act 80 and (ii) collectively, the December 2021 and September 2023 Stipulations and the July 2022 Letter. (See Compl. ¶¶ 19, 25.) As explained below, Plaintiffs' claims are not substantiated by the facts that they allege and the documents upon which they rely.

Turning first to Act 80, the Court concludes that Act 80 did not confer a property interest on Plaintiffs because, as Plaintiffs concede, the statute itself was not self-executing and Act 80 was invalidated prior to its partial implementation. (See Compl. ¶¶ 11-12 (indicating that the December 2021 Stipulation invalidated Act 80 and JR 33).) As noted above, JR 33 established a deadline of January 31, 2022, for the partial implementation of Act 80 and made it clear that, at the time JR 33 was enacted, Act 80 was not yet in effect. (See JR 33 at 2 (stating that the Government postponed the "entry into effect" of Act 80 pending reaching an agreement with the Oversight Board); Informative Mot. ¶ 2 (indicating that JR 33 required implementation of Act 80 by January 31, 2022.) On December 28, 2021, prior to the expiration of this implementation deadline and prior to any actual implementation of Act 80, the Court so-ordered

the December 2021 Stipulation which, among other things, nullified Act 80 and JR 33 except to the extent an agreement was otherwise reached with the Oversight Board on a means for implementation.  Under such circumstances, Act 80 could not have created any legitimate claim to property rights in early retirement benefits for Plaintiffs.  See, e.g., Roth, 408 U.S. at 578 (concluding that there was no property interest in faculty member's employment after expiration of fixed term employment because neither the contract nor any state statute or university rule or policy secured an interest or created any legitimate claim).

The Court reaches the same conclusion with respect to the December 2021 and September 2023 Stipulations and the July 2022 Letter, which the Complaint alleges jointly established a property interest in early retirement benefits for Plaintiffs.  (See Compl. ¶¶ 19, 25 (asserting that the two stipulations "coupled with" the July 2022 Letter "created a property right").)  First, the December 2021 Stipulation invalidated Act 80 and provided only that the parties were to "endeavor to reach an agreement on a means of implementing the incentivized early retirement provisions" of Act 80 for "certain employees."  (Dec. 2021 Stip. ¶¶ 3-4.)  To the extent parties reached agreement on, among other things, the proposed positions to be eliminated and net savings, the parties were then required to "use their respective best efforts to concur on a means of implementation."  (Dec. 2021 Stip. ¶ 3(b).)  Second, while the July 2022 Letter informed Plaintiffs of their eligibility for early retirement under Act 80, the September 2023 Stipulation that followed, entitled "interim," made it clear that the Oversight Board and relevant government parties remained in negotiations even at that later date.  As set forth in the September 2023 Stipulation, the Governor and AAFAF had exchanged lists of proposed positions to be eliminated with the Oversight Board that reflected agreements reached between the parties.  (See Sept. 2023 Stip. ¶¶ 16(III)(B)-(D).)  The last iteration of the list was sent on

December 21, 2022.  (Sept. 2023 Stip. ¶ 16(III)(D).)  The September 2023 Stipulation required

the parties to file a stipulation that would confirm their final agreement on Act 80's partial

implementation and request approval from the Court of the same.  (Sept. 2023 Stip. ¶ 16(IX).)

Collectively, the December 2021 and September 2023 Stipulations and the July

2022 Letter did not confer on Plaintiffs a property interest in early retirement benefits, because

none of those documents constituted a final agreement between the parties.  See Town of Castle

Rock v. Gonzales, 545 U.S. 748, 763 (2005) ("[I]ndeterminacy is not the hallmark of a duty that

is mandatory.  Nor can someone be safely deemed 'entitled' to something when the identity of

the alleged entitlement is vague." (citations omitted)).  As the Complaint itself acknowledges, it

was not until March 22, 2024, that the Final Stipulation was entered, which excluded Plaintiffs'

positions from the final list of positions to be eliminated and ultimately rendered them ineligible

for early retirement pursuant to Act 80.  (See Compl. ¶ 16 ("None of the Plaintiffs was included

in said list.  None of the Plaintiffs were able to take early retirement pursuant to Act 80.").)

Indeed, participation in the partial implementation of Act 80 was "solely and exclusively

limited" to those included on the final list of eliminated positions the Oversight Board agreed to.

(Final Stip. ¶ 11(VII).)  For these reasons, the Complaint, read in the light most favorable to

Plaintiffs, does not demonstrate that Plaintiffs had a property interest in early retirement benefits,

and Counts I and II are accordingly dismissed for failure to state a claim upon which relief may

be granted.

> b.  Count III

Count III asserts a tort claim, alleging violations of Articles 1536 and 1540 of the

Puerto Rico Civil Code of 2020, P.R. LAWS ANN. tit. 31 §§ 10801, 10805.  (See Compl. ¶ 30.)

Article 1536, which serves as Puerto Rico's general tort statute, provides that "any person who,

through fault or negligence, causes damage to another, is obliged to repair it." Dumanian v. FirstBank P.R., No. CV 22-1543 (CVR), 2024 WL 197429, at *3 (D.P.R. Jan. 17, 2024) (quoting P.R. LAWS ANN. tit. 31 § 10801). "Fault under Article 1536 could be committed knowingly and willfully or could simply be an act willful or not, of a person which produces a wrong or damage." Forde v. Concho Corp., No. CV 23-01052 (MEL), 2025 WL 320683, at *3 (D.P.R. Jan. 28, 2025) (internal quotation marks and citation omitted)). Negligence, on the other hand, is defined to be "the failure to exercise due diligence to avoid foreseeable risks." Dumanian, 2024 WL 197429, at *3 (internal quotation marks and citations omitted).

To establish a claim under Article 1536, a plaintiff must show "(1) evidence of a physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Id. (quoting González-Cabán v. JR Seafood Inc., 48 F.4th 10, 14 (1st Cir. 2022). In particular, the breach of duty element "requires showing the existence of a duty and its breach." Forde, 2025 WL 320683, at *3. In the negligence context, a defendant is considered to have breached a duty "if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." Id. (quoting Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007)).

Meanwhile, Article 1540 extends Article 1536's "legal mandate" outside of a person's own acts, setting forth the "norm of what is known as vicarious liability or respondeat superior." González Villegas v. Doctors' Ctr. Hosp., No. CV 21-1592 (GMM), 2025 WL 949471, at *6 (D.P.R. Mar. 28, 2025) (citations omitted). Specifically, under Article 1540, "directors of an establishment or enterprise" may be held "vicariously liable for damages caused by their employees in the course of their employment or on account of their duties." Marrero-

Areizaga v. Garcia, No. CV 22-1100 (RAM/BJM), 2023 WL 11196889, at *3 (D.P.R. Oct. 5, 2023) (discussing Article 1803, the predecessor to Article 1540); see Orellano-Laureano v. Instituto Medico del Norte, Inc., No. CV 22-01322 (MAJ), 2023 WL 4532418, at *6 n.5 (D.P.R. July 13, 2023) (noting that, while Article 1540 updates Article 1803, the "provisions are extremely similar and thus can be used interchangeably"). Plaintiffs maintain that EDB is liable on account of its own actions as well as vicariously pursuant to Article 1540. (See Obj. ¶ 22.)

Plaintiffs rest their tort claim on Defendants' alleged failure to provide Plaintiffs with due process and truthful information regarding who denied Plaintiffs early retirement, which they argue resulted in damages that Defendants should have foreseen. (Compl. ¶ 30; Obj. ¶ 22.) Defendants, Plaintiffs contend, had duties to provide both. (Compl. ¶ 30.) As a general matter, a duty of care may arise "(1) by a statute, regulation ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." Silvas v. Hilton Int'l of P.R., LLC, No. CV 21-1597 (RAM), 2024 WL 404951, at *3 (D.P.R. Feb. 2, 2024) (quoting De-Jesus-Adorno v. Browning Ferris Indus. of P.R., Inc., 160 F.3d 839, 842 (1st Cir. 1998)). For the reasons that follow, the Court finds that the Complaint lacks sufficient allegations to support the existence of either duty.

First, as explained above, Defendants did not have a duty to provide Plaintiffs with due process. Plaintiffs did not have a property interest in early retirement benefits that would support a claim for either procedural or substantive due process. As for a duty to provide truthful information, Plaintiffs fail to allege the source of this duty and, in any event, do not demonstrate how the failure to disclose who was responsible for deeming Plaintiffs ineligible for early retirement benefits resulted in their alleged injury. Indeed, the damages sought stem from

the determination itself that Plaintiffs were "essential" as opposed to the identity of the party or parties making the determination.  Accordingly, given Plaintiffs' failure to show the existence of either duty, Count III is also dismissed for failure to state a claim upon which relief can be granted.

CONCLUSION

For the foregoing reasons, the Moving Defendants' Motion, together with the Vargas Joinder, is granted and the Complaint is dismissed in its entirety as to all Defendants.  In light of the dismissal of the Complaint for the reasons discussed, the Court deems it unnecessary to address the remaining arguments raised in support of dismissal.  This Memorandum Opinion and Order resolves Docket Entry Nos. 35 and 36.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: August 27, 2025

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge